803 F.2d 721
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CARL NANCE, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 84-3761.
 United States Court of Appeals, Sixth Circuit.
 Sept. 8, 1986.
 
 Before: LIVELY, and MERRITT, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Carl Nance appeals from an order of the district court granting the Secretary's motion for summary judgment and finding that the reversal by the Appeals Council of the administrative law judge's finding of disability was supported by substantial evidence. For the reasons that follow, we affirm
 
 I.
 
 2
 On November 24, 1981, Carl Nance, born February 10, 1948, applied for disability benefits alleging a back injury as his disability. After the Secretary denied benefits, Nance sought reconsideration on March 17, 1982, and such was denied on April 9, 1982. Nance indicated that he does household chores, runs the vacuum, drives and has no problem socializing. From 1977 to 1981, Nance worked as a warehouseman, forklift operator, and sweeper for Cooper Energy Services. Nance requested a hearing, noting that "omly nervous condition is much worse. I am very short tempered and the pain and discomfort is worse in my back, legs and I have severe headaches." A hearing was held on August 17, 1982.
 
 
 3
 Nance testified that he weighed 185 pounds and had completed a six-week welding training school. Nance last worked at Cooper Energy on May 10, 1981, where he generally lifted 10 to 50 pounds. The ALJ found that this was light to heavy work. Nance testified that he can go shopping, to church, and can walk and stand, but cannot kneel or bend over without pain. Nance can lift 10 to 15 pounds and can walk 35 to 40 feet before his legs and back start hurting. Nance can stand or sit for 15 to 20 minutes at a time.
 
 
 4
 Nance testified that he had missed a lot of work due to his back problem and depression and that he had severe pain in his lower back, spine, neck, shoulders, and arms. Nance indicated that he did not seek psychiatric or psychological care because he "[d]idn't think I was that bad off." Nance planned to enter a hospital for treatment of an emotional disorder.
 
 
 5
 Evidence in the record reveals that on June 3, 1980, Nance was admitted to the hospital after a motorcycle accident but x-rays showed no fractures. Examination by Nance's treating physician, Dr. Pavlatos
 
 
 6
 [r]eveals some tenderness about the right shoulder area with about 10 to 20 percent restriction of motion in the shoulder. The lumbar spine area demonstrates considerable tenderness with paravertebral muscle spasm and splinting of the back on any type of movement.
 
 
 7
 Pavlatos diagnosed "acute recurrent sprain and strain of the lumbar spine and residuals of right shoulder injury." An electromyogram was negative and Nance was treated with physiotherapy, muscle relaxants, and transcutaneous nerve stimulation. An x-ray of May 27, 1981, revealed no significant abnormality. In late 1981, Pavlatos diagnosed Nance's ailment as "Acute Sprain and Strain of the Cervical and Lumbar Spine with a Possible Ruptured Disc Involving the Left Sciatic Nerve." On December 30, 1981, Pavlatos found Nance totally disabled for the next 12 to 24 months. Pavlatos found:
 
 
 8
 considerable tenderness over the cervical and lumbar spine with paravertibral muscle spasm in the lower back and neck area. There was marked restriction of motion of the neck on rotation, flexion, and extension as well as about 50% restriction of the lower back on any type of movement. He had definite tenderness over the course of the left sciatic nerve with some weakness of the left leg.
 
 
 9
 Pavlatos found Nance's impairment severe to moderately severe. Pavlatos further found that Nance can neither sit nor stand at all, can lift 10 pounds occasionally, can do simple grasping and fine manipulation but no pushing or pulling, and cannot use his feet. Nance cannot reach above shoulder level, bend, squat, crawl or climb.
 
 
 10
 Clyde Henderson, M.D., examined Nance and reported on February 13, 1982, no evidence of neurologic deficit or mechanical disorder.
 
 
 11
 There is no weakness noted in any of the extremities and no rigidity or tremors noted. . . . Sensory testing of the lower and upper extremity is normal to pin and light touch.
 
 
 12
 The gait is normal, and he heel and toe gaits across the examining room extremely well and gets on and off the examining table without any difficulty whatsoever. There are no scars or spasms in the spine and no tenderness in the middle and no sacroiliac or sciatic notch tenderness.
 
 
 13
 On June 30, 1982, clinical psychologist Eugene S. Cherry found:
 
 
 14
 Mr. Nance is impaired in his ability to relate to others as a result of his high and chronic anxiety level, as well as his current depressed state in which he feels intense feelings of inadequacy.
 
 
 15
 His anxiety is apparent from his easy irritability, and his depression is observable from a marked sleep disturbance, psychomotor retardation, and clear verbalizations of inadequacy as a result of his inability to work. His speech was relevant and coherent and directed towards answering all questions asked of him. He was oriented to person, time and place. His memory for recent and remote events was good. In the opinion of the examiner, Mr. Nance is exercising adequate judgment for the conduct of his own affairs.
 
 
 16
 Cherry found plaintiff impaired from all gainful employment on the ground that he could not withstand the stress of work, and that intensive hospital treatment was required to improve Nance's condition. Dr. Devider Yakhami, M.D., indicated that because Nance was depressed he drank and sniffed glue and that he was suffering a depressive reaction.
 
 
 17
 The ALJ found disability without opinion. On October 12, 1982, the Appeals Council indicated that the ALJ's decision was not supported by substantial evidence, and, on February 16, 1983, found that Nance was not disabled. The Council found that "Dr. Cherry's opinion as well as Dr. Pavlatos' opinion that the claimant has a severe mental impairment was largely based on the claimant's representations of symptoms rather than medical findings of severe psychopathology." The Council found that although claimant did not suffer from a listed impairment, he did suffer from a vertebrogenic disorder of the spine. The Council found that Pavlatos' conclusion that Nance is totally disabled is not supported by medical findings. The Council found that
 
 
 18
 the claimant's musculosketal impairment does significantly restrict his ability to perform work activities but not to the extent that he is unable to perform any substantial gainful activity. The Council believes and will find that beginning on May 10, 1981, he was no longer able to perform his past work as a warehouseman which required at least medium level exertion. However, because he performed such work before May 10, 1981, and because there is no persuasive evidence, that his underlying pathology worsened, that is, no definitive lesion has been found, the Council finds that, on and after May 10, 1981, the claimant retained the functional capacity to at least perform light work as defined in section 404.1567 of Regulations No. 4.
 
 
 19
 The Council applied Rules 202.17 and 202.18 of the grid and concluded that Nance was not disabled. The Council concluded that Nance's testimony was not supported by the evidence.
 
 
 20
 Nance filed a complaint in district court and the parties sought summary judgment. On March 30, 1984, the magistrate found that the Secretary properly rejected Pavlatos' report in favor of Henderson's; that the Secretary properly found that Nance's complaints of pain lacked credibility; that the Secretary properly rejected the reports of Drs. Yakhami and Cherry; and that the Secretary properly relied on Rules 202.17 and .18 to rebut the prima facie case. On August 31, 1984, the district court adopted the magistrate's report and granted summary judgment in favor of the Secretary.
 
 II.
 
 21
 We review the Secretary's decision, that of the Appeals Council, to determine whether such is supported by substantial evidence. Mullen v. Secretary of Health and Human Services, Case No. 84-1455, slip op. at 22 (6th Cir., Sept. 2, 1986). "A prima facie case is established if the claimant shows a medical basis for an impairment that prevents him from engaging in his particular occupation." Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the claimant makes his prima facie case, the burden shifts to the Secretary to show that there is work in the national economy which he can perform Id. at 362. Because the Secretary concedes that Nance cannot perform his past work, Nance has established his prima facie case. Therefore, we focus on whether he retained residual functional capacity to work.
 
 
 22
 The Appeals Council concluded that appellant could do light work as defined in 20 C.F.R. Sec. 404.1567(b):
 
 
 23
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 
 
 24
 Both Nance and Pavlatos indicated that Nance could lift objects of 10 pounds. Although we recognize that Dr. Pavlatos concluded that Nance had other severe limitations on his activity and that deference is traditionally accorded to the opinion of the treating physician, Pavlatos' conclusions are undermined by the results of the electromyogram, the May 1981 x-ray, and the report of Dr. Henderson, an examining physician. Accordingly, we conclude that the Council's conclusion that Nance could engage in light work is supported by substantial evidence.
 
 
 25
 Reference to the grid, Rules 202.17 through .22, dictate a conclusion of "not disabled" regardless of Nance's level of education or previous work experience. However, the grid and its rules cannot be strictly followed in cases such as this where nonexertional impairments exist in the form of mental disorder and pain. When nonexertional impairments are implicated, "full consideration must be given to all of the relevant facts" and the Rules "for consideration of how much the individual's work capability is further diminished . . . ." App. 2, Sec. 200.00(e)(2).
 
 
 26
 In this case, the Appeals Council concluded that the allegations of pain and mental disorder lacked credibility. It cannot be said, when all facts and circumstances are considered, that a reasonable person could not conclude that claimant was not disabled. Accordingly, the decision of the Appeals Council is supported by substantial evidence.
 
 
 27
 Accordingly, the judgment of the district court is AFFIRMED.